**U.S. COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**AMARANTH ADVISORS, LLC et al., Defendants.**

**No. 07 Civ. 6682 (DC).**

United States District Court, S.D. New York.

Nov. 1, 2007.

---

Terry Arbit, Esq., General Counsel for the U.S. Commodities Futures Trading Commission, by Manal Sultan, Esq., Stephen Jay Obie, Esq., Bradford M. Berry, Esq., David W. MacGregor, Esq., New York, NY, Attorneys for Plaintiff U.S. Commodities Futures Trading Commission.

Winston & Strawn, LLP, by David Emilio Mollon, Esq., Stephen J. Senderowitz, Esq., New York, NY, Attorneys for Defendants Amaranth Advisors, LLC and Amaranth Advisors (Calgary) ULC.

Cynthia Marlette, Esq., General Counsel for the Federal Energy Regulatory Commission, by P. Todd Mullins, Esq., Leslie B. Bellas, Esq., Washington, DC, Attorneys for the Federal Energy Regulatory Commission.

Spiegel & McDiarmid, by Daniel I. Davidson, Esq., Robert C. McDiarmid, Esq., Peter J. Hopkins, Esq., Mark S. Hegedus, Esq., Washington, DC, Attorneys for Amici Curiae American Public Gas Association, American Public Power Association, and National Rural Electric Cooperative Association.

Kirkland & Ellis LLP, by Mark D. Young, Esq., Washington, DC, by Eric F. Leon, Esq., New York, NY, Attorneys for Amici Curiae Chicago Mercantile Exchange Group, Inc., Futures Industry Association, Inc., International Swaps and Derivatives Association, Inc., Managed Funds Association, Inc., and New York Mercantile Exchange, Inc.

James Bradford Ramsay, Esq., General Counsel for the National Association of Regulatory Utility Commissioners, by Grace D. Soderberg, Esq., Washington, DC, Attorneys for Amici Curiae National Association of Regulatory Utility Commissioners.

## OPINION

CHIN, District Judge.

On July 25, 2007, the Commodity Futures Trading Commission (the "CFTC") brought this action against Amaranth Advisers, LLC and others (collectively, "Amaranth"), alleging price manipulation with respect to natural gas futures contracts and seeking injunctive relief and civil penalties. The very next day, July 26, 2007, the Federal Energy Regulatory Commission ("FERC") commenced an administrative enforcement proceeding against Amaranth, based essentially on the same transactions, for civil penalties and the disgorgement of profits. Hence,

Amaranth is being pursued by two federal regulatory agencies in two separate proceedings in two different jurisdictions, based on the same alleged conduct.

Amaranth moves for a preliminary injunction to enjoin FERC—which is not a party to the instant lawsuit—from proceeding with its administrative action pending the outcome of this case. Amaranth contends that because this suit was filed by the CFTC, which has primary, if not exclusive, jurisdiction over the natural gas futures contracts market, the FERC administrative proceeding should be stayed to avoid inconsistent outcomes and to relieve Amaranth of the burden of defending itself in two different proceedings. Although I agree that it would be prudent for FERC to defer to this lawsuit, for the reasons that follow, I decline to order FERC to stay its administrative action. Amaranth's motion for a preliminary injunction is denied.

### BACKGROUND

#### A. Facts

##### 1. Federal Regulation of Natural Gas

Natural gas is sold in two different types of markets. In the financial markets, buyers and sellers trade standardized contracts for the delivery of natural gas on a future date at a prearranged price. These "futures contracts" are bought and sold on futures or commodity exchanges, such as the New York Mercantile Exchange ("NYMEX"). Natural gas itself is purchased, sold, and transferred in the physical market. According to a Senate report published in June 2007, although the trading of natural gas futures contracts "rarely result[s] in the physical delivery of natural gas," the price of natural gas in the financial markets is "linked to the price of natural gas in the physical market." *Staff Rep. of S. Permanent Sub-*

*comm. on Investigations, Comm. on Homeland Sec. and Governmental Affairs,* 110th Cong., *Excessive Speculation in the Natural Gas Market* 27 (2007) (FERC Ex. 2).

Two federal agencies regulate the trading of natural gas. The CFTC is responsible for overseeing commodity futures markets, including the natural gas futures market, under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* (the "CEA"). FERC regulates the interstate transmission of electricity, natural gas, and oil pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (the "NGA").

In 2005, Congress enacted the Energy Policy Act, Pub.L. No. 109–58, 119 Stat. 594 (codified as amended in scattered sections of U.S.C.) ("EPAct 2005"), which "broadened FERC's authority over natural gas commodity markets to include, among other things, more authority to police natural gas markets, punish manipulation, and impose greater penalties for other types of violations." *U.S. Gov't Accountability Office, Report to the Permanent Subcomm. on Investigations, Comm. on Homeland Security and Governmental Affairs, Roles of Federal and State Regulators in Overseeing Prices,* GAO–06–968, at 2 (Sept. 2006) (citing EPAct 2005) (FERC Ex. 5). Recognizing that their jurisdictions may overlap, Congress required the CFTC and FERC to enter into a memorandum of understanding ("MOU"), "relating to information sharing, which shall include, among other things, provisions ensuring that information requests to markets within the respective jurisdiction of each agency are properly coordinated to minimize duplicative information requests." 15 U.S.C. § 717t–2(c)(1).

On October 12, 2005, the CFTC and FERC entered into a MOU, which acknowledged FERC's exclusive jurisdiction over the transportation and certain inter-

state sales of natural gas, and the CFTC's exclusive jurisdiction over accounts, agreements, and transactions involving futures contracts. At the same time, recognizing that their oversight and enforcement activities might overlap, the agencies agreed to "coordinate on a regular basis oversight, investigative, and enforcement activities of mutual interest" by sharing information. (MOU at 3) (FERC Ex. 3).

Also pursuant to EPAct 2005, FERC promulgated Rule 1c.1, known as the Anti–Manipulation Rule. The Rule prohibits "any entity, directly or indirectly, in connection with the purchase or sale of natural gas," from engaging in deception or fraud. 18 C.F.R. § 1c.1 (2007).

## 2. *Amaranth*

Defendants were hedge fund investment advisors who traded in the natural gas futures markets until approximately September 2006. (Def. Mem. 5). Brian Hunter, also a defendant, was a natural gas trader and portfolio manager at Amaranth between June 2004 and September 2006. (FERC Mem. 5). Defendants traded in the natural gas futures market, but did not buy or sell physical natural gas.

In April 2006, FERC observed anomalies in the prices of natural gas futures contracts on NYMEX, which prompted FERC and the CFTC to conduct non-public investigations of Amaranth. (FERC Mem. 11). The two agencies coordinated their investigations pursuant to the MOU. (*See* FERC Ex. 10).

## B. *Prior Proceedings*

### 1. *This Lawsuit*

After a year-long investigation, the CFTC commenced this action on July 25, 2007, alleging that Amaranth and Hunter attempted to manipulate the prices of natural gas futures contracts for March 2006

and May 2006 during the last half hour that those contracts traded on NYMEX. (CFTC Mem. 1). The CFTC's complaint also alleged that Amaranth violated section 9(a)(4) of the CEA by making false statements to NYMEX regarding the May 2006 trades in question. (*Id.*). The CFTC seeks to enjoin defendants from trading commodity interests and from engaging in business activities related to commodity interest trading, as well as civil penalties not exceeding $130,000 for each violation of the CEA. (FERC Mem. 17).

On August 16, 2007, Amaranth moved in this case for a preliminary injunction enjoining FERC from pursuing administrative action against defendants until final resolution of the instant lawsuit. Although FERC is not a party in this action, it has appeared and submitted arguments, orally and in writing, opposing the motion.

### 2. *The FERC Administrative Proceeding*

On July 26, 2007, the day after the instant lawsuit was filed, FERC issued an administrative Order to Show Cause ("OSC"), returnable before FERC, asserting that Amaranth traders drove down the price of natural gas futures contracts. FERC alleges that this, in turn, "had a significant impact on physical markets given the role of the N[atural] G[as] Futures settlement price in physical market price formation," thereby affecting "a substantial volume of FERC jurisdictional natural gas transactions." (FERC Mem. 13). Specifically, FERC charged Amaranth with violating the Anti–Manipulation Rule's prohibitions against employing "any device, scheme, or artifice to defraud" and engaging "in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any entity." 18 C.F.R. § 1c.1. FERC seeks more than $200 million in civil penalties and disgorge-

ment of at least $59 million in profits. (FERC Mem. 14).

On August 27, 2007, Amaranth requested from FERC an expedited administrative rehearing to terminate the OSC on the ground that FERC lacks subject matter jurisdiction. (CFTC Ex. F). This request is still pending. FERC sent a letter dated October 12, 2007 to this Court, indicating that it "will proceed to take up and rule on Amaranth's request for rehearing on the issue of FERC's jurisdiction and will do so quickly as possible."

## DISCUSSION

■ A preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted." *Medical Soc. of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir.1977). It is extraordinary for a court to enjoin a proceeding in another forum, not only because of the potential delay in the adjudication of rights, but also because of the respect that must properly be given to that forum. It is especially extraordinary for a court to enjoin a federal agency that is not within its *in personam* jurisdiction from pursuing a regulatory action, as Amaranth moves this Court to do so here. Indeed, defendants have not cited any case—nor has this Court found any—in which a federal court has stayed a nonparty federal agency's administrative enforcement action. (Tr. 4). Amaranth's motion for a preliminary injunction thus raises the following issues: Does this Court have the power to stay an administrative proceeding brought by a federal agency that is not a party before the Court? And if so, should the Court do so?

### A. Does the Court Have the Power to Stay FERC's Administrative Action?

■ Two provisions of law grant federal courts the power to preliminarily enjoin proceedings in another forum: Federal Rule of Civil Procedure 65 and the All–Writs Act, 28 U.S.C. § 1651. According to the Second Circuit, "there is a difference between the power to enjoin ... pursuant to the All–Writs Act and the narrower authority delineated by Rule 65(d)." *In re Baldwin–United Corp.*, 770 F.2d 328, 339 (2d Cir.1985). I consider each provision separately.

### 1. Rule 65

■ The decision whether to grant a preliminary injunction under Rule 65 is a matter for the trial court's discretion. *See, e.g., Museum Boutique Intercontinental, Ltd. v. Picasso*, 880 F.Supp. 153, 161 (S.D.N.Y.1995). A preliminary injunction should not issue unless the moving party demonstrates: "a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Time Warner Cable of N.Y. v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir.1997).

Although Amaranth argues that these factors weigh in favor of a stay of FERC's proceeding (*see, e.g.*, Def. Mem. 9), I need not reach this question here because section (d) of Rule 65 makes "[e]very order granting an injunction ... binding only upon the *parties* to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them." Fed. R.Civ.P. 65(d) (emphasis added). FERC is not a party to this action; nor is FERC an officer, agent, servant, employee, or attorney of the CFTC. Moreover, although CFTC and FERC arguably pursued their investigations of Amaranth "in active concert," this is not the type of collaborative behavior that Rule 65(d) addresses. The

Rule originates from "the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945). The purpose was to prevent defendants from "nullify[ing] a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Id.*

█ Rule 65(d) does not apply to collaboration between two agencies pursuing enforcement actions pursuant to different statutes. The CFTC and FERC are independent federal agencies not in legal privity with each other. Congress contemplated and authorized the sharing of information between CFTC and FERC in connection with their enforcement activities. *See* 15 U.S.C. § 717t–2(c)(1). Their collaboration is clearly not the sort of "prohibited acts" that Rule 65(d) was designed to proscribe. Accordingly, this Court does not have the power to enjoin FERC, a non-party, under Rule 65.

### 2. *The All–Writs Act*

#### a. *The Court's Power Over Non–Parties*

█ Under the All–Writs Act, federal courts have authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. A court's authority to issue an injunction under the Act is not limited by Rule 65(d), which restricts the scope of injunctions to parties and persons in their control or in collaboration with them, because Rule 65 and the All–Writs Act are separate legal provisions invoked in different situations for the issuance of injunctions. The Second Circuit has explained the difference as follows:

> Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand. In contrast, injunctions [under the All–Writs Act] are needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it.

*In re Baldwin–United Corp.*, 770 F.2d 328, 339 (2d Cir.1985). In light of the different purposes, the Second Circuit did not construe the limitations in Rule 65 to apply to a court's authority to protect its jurisdiction under the All–Writs Act. *Id.* If a court finds an injunction "necessary and appropriate," the All–Writs Act empowers the court "to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *Id.* at 338 (citing *United States v. New York Telephone Co.*, 434 U.S. 159, 174, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) ("The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice.")).

#### b. *The Court's Power To Protect Its Jurisdiction*

█ Although a court may enjoin a non-party under the All–Writs Act, the language of the Act is clear that the purpose of such an injunction must be to aid the court's jurisdiction. The Second Circuit has explained a federal court's authority to protect its jurisdiction in the context of concurring state and federal jurisdictions in the following way:

When a federal court has jurisdiction over its case in chief, ... the All–Writs Act grants it ancillary jurisdiction to issue writs "necessary or appropriate in aid of" that jurisdiction ... "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."

*In re Baldwin–United Corp.*, 770 F.2d at 335 (quoting *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)). An injunction issued pursuant to the All–Writs Act would thus be justified if necessary to preserve a court's jurisdiction. Accordingly, I conclude that this Court has the power to stay the FERC proceeding, even though FERC is not a party to this lawsuit, if such a stay is necessary to protect this Court's jurisdiction.

### B. Should the Court Stay FERC's Administrative Action?

■ Having concluded that I have the power, under the All–Writs Act, to enjoin FERC from proceeding with its administrative action, I turn to the question of whether I should do so. Two lines of inquiry are presented: first, whether the FERC administrative proceeding will interfere with this Court's jurisdiction, and second, whether FERC should be enjoined from proceeding because the CFTC has primary, if not exclusive, jurisdiction over the natural gas futures market.

### 1. Does the FERC Proceeding Interfere with the Court's Jurisdiction?

■ In determining whether the FERC proceeding interferes with the Court's jurisdiction as required by the aid-of-jurisdiction provision of the All–Writs Act, it is helpful to refer to cases involving stays of state court proceedings under the Anti–Injunction Act because of the similarities in the language of the two Acts. The Anti–Injunction Act provides several exceptions to its general prohibition against "an injunction to stay proceedings in a State court." 28 U.S.C. § 2283. Pertinent here is the second exception, which allows federal courts to grant an injunction "where necessary in aid of its jurisdiction." *Id.* Similarly, the All–Writs Act empowers federal courts to grant injunctions "necessary and appropriate in aid of their respective jurisdiction." § 1651. Indeed, the Second Circuit, when "determining whether [an] injunction was a permissible exercise of [a district court's] authority under the All–Writs Act, ... look[ed] both to cases interpreting this Act and also to cases interpreting similar language appearing in the Anti–Injunction Act" because "cases interpreting this clause of the Anti–Injunction Act have been helpful in understanding the meaning of the All–Writs Act." *In re Baldwin–United Corp.*, 770 F.2d at 335.

■ Under the Anti–Injunction Act, the aid-of-jurisdiction exception applies "where the effect of [a proceeding in a state court of concurrent jurisdiction] would be to defeat or impair the jurisdiction of the federal court." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226 (1922). The Supreme Court and the Second Circuit have construed this exception narrowly, limiting it to "the rare occasion, ... most notably in complex multidistrict actions on the verge of settlement." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 445 F.Supp.2d 356, 360 (S.D.N.Y.2006). In those cases, identical actions brought in state courts threatened to undermine a federal court's attempts to finalize an intricate settlement agreement between numerous parties. The aid-of-jurisdiction exception applied because an action in another forum frus-

trated the federal court's ability to reach judgment in its case.

This action, initiated in July 2007, is in its early stages. The parties are still in the pretrial phase, and a resolution of the matter does not appear to be on the horizon. The Court is not aware that the parties have even begun settlement discussions. At this point, when the Court is far from reaching a decision or approving a settlement, a parallel proceeding before FERC does not thwart the Court's path to judgment, and so a stay of the FERC proceeding would not necessarily be in aid of the Court's jurisdiction.

Nonetheless, Amaranth raises two reasons why "the FERC action improperly interferes with this Court's jurisdiction over the CFTC action": first, "the potential preclusive effect of final agency determinations," and second, the "substantial danger of inconsistent judgments." (Def. Mem. 9). It is well established, however, that being "'the first court to reach a judgment and thereby avoid issues of' preclusion" does not interfere with a district court's jurisdiction. *Id.* (quoting *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir.2004)).

 The case law is also well settled that duplicative actions in another forum do not require an injunction to aid a court's jurisdiction. *See, e.g., Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 641, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) ("The traditional notion is that in personam actions in federal and state court[s] may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 [the Anti-Injunction Act] was intended to alter this balance."); *In re Baldwin-United Corp.*, 770 F.2d at 337 ("risk of inconvenience or duplicative litigation ... would not ordinarily justify enjoining the state court actions"). Although parallel litigation may

present a risk of inconsistent judgments, courts have nevertheless held that when a judgment is rendered in one court, "the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. at 642, 97 S.Ct. 2881 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. at 230, 43 S.Ct. 79). In other words, the possibility of inconsistent judgments is not an interference with a court's jurisdiction because the doctrine of res judicata provides a way for the court to deal with prior judgments "as it would determine any other question of fact or law arising in the progress of the case." *Kline*, 260 U.S. at 230, 43 S.Ct. 79.

I am not persuaded that the FERC proceeding will "seriously impair" this Court's ability to reach and resolve the merits of the case before it, or that it will frustrate the administration of justice in the instant case. Because a preliminary injunction staying the FERC proceeding is not necessary to aid this Court's jurisdiction, I decline to enjoin FERC's administrative action.

### 2. *May the Court Review FERC's Exercise of Jurisdiction?*

 In further support of its motion for a preliminary injunction, Amaranth argues that the CFTC has exclusive jurisdiction—and consequently, that FERC lacks jurisdiction—to prosecute its trading activities in the commodity markets. In the alternative, Amaranth submits that the CFTC has primary jurisdiction, which would require FERC to defer to the CFTC action. Both arguments are rejected.

First, the All-Writs Act empowers courts to issue an injunction "in aid of

*their* respective jurisdictions"—not in aid of another forum's jurisdiction. 28 U.S.C. § 1651 (emphasis added). An injunction to protect the CFTC's jurisdiction from the FERC proceeding, therefore, would exceed this Court's power under the All–Writs Act. Moreover, the CFTC has not taken the position that FERC is improperly treading into its territory.

■ Second, Amaranth has not followed the procedures that Congress has prescribed for challenging FERC's alleged encroachment of the CFTC's exclusive jurisdiction. Congress specified that "[a]ny party to a proceeding under this Act aggrieved by an order issued by FERC in such proceeding may obtain a review of such order in the court of appeals of the United States." NGA § 19(b). The statutory language is clear that a challenge to FERC's jurisdiction must be brought in a circuit court, not a district court. *See Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir.2001) (statutes that "vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with review of such orders"); *see also Consolidated Gas Supply Corp. v. FERC*, 611 F.2d 951, 957 (4th Cir.1979) (holding that because the NGA "vests exclusive jurisdiction to review all decisions of the Commission in the circuit court of appeals, there is no area of review, whether relating to final or preliminary orders, available in the district court" (internal citations omitted)). Accordingly, Amaranth's assertion that FERC is improperly exercising jurisdiction is for a court of appeals to address on direct review after FERC issues its decision on the OSC.

■ It could be argued that the language of section 19 might permit a district court to entertain an application for a preliminary injunction before FERC issues a final order or a petition for review is filed. But to allow parties to circumvent Congress's scheme of judicial review by choosing not to file a petition for review with FERC or the court of appeals would defeat the exclusive review provisions of section 19. Amaranth cannot attempt an end-run around the NGA's provision that all parties obtain review in a circuit court by preemptively seeking an injunction in a district court before FERC issues a decision. *See Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 263 (10th Cir.1989) (disallowing collateral attack that "ultimately challenges FERC's determination of its own jurisdiction," which must be raised on appeal from a FERC order).

District courts are not the proper fora for defendants to challenge FERC's jurisdiction, and therefore, I decline to decide the issue of FERC's jurisdiction. An argument raising a jurisdictional challenge thus does not support Amaranth's motion for a preliminary injunction to enjoin FERC's administrative action.

## CONCLUSION

For the foregoing reasons, I conclude that defendants have failed to satisfy the requirements for a preliminary injunction under Rule 65 and the All–Writs Act. The question of FERC's jurisdiction over the defendants is statutorily committed to a court of appeals, so this Court lacks jurisdiction to decide this issue. For these reasons, defendants' motion for a preliminary injunction against FERC is denied.

Although I decline to enjoin FERC from proceeding with its administrative action, I do note that Congress intended the CFTC and FERC to coordinate their efforts, at least to some degree. Amaranth's concern in having to defend itself in two separate actions for the violations of two Acts based

on the same underlying conduct does not justify a stay of the FERC proceeding, but the concern is understandable. Accordingly, I urge FERC to work with the CFTC and Amaranth to coordinate their efforts in the two proceedings, to maximize efficiency and minimize duplication.

SO ORDERED.